**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW SPINDLER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) **Case No.** |
| Plaintiff, | ) ) ) |
| v. | ) **CLASS ACTION COMPLAINT** ) ) |
| FORTERRA, INC., JEFFREY BRADLEY, WILLIAM MATTHEW BROWN, LORI M. BROWNE, KYLE S. VOLLUZ, KEVIN BARNER, ROBERT CORCORAN, SAMUEL D. LOUGHLIN, CLINT MCDONNOUGH, JOHN MCPHERSON, CHRIS MEYER, JACQUES SARRAZIN, CHADWICK SUSS, and GRANT WILBECK, | ) **JURY TRIAL DEMANDED** ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**CLASS ACTION COMPLAINT**

Plaintiff Matthew Spindler ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Forterra, Inc. ("Forterra" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Forterra securities: (1) pursuant and/or traceable to Forterra's false and misleading Registration Statement and Prospectus, issued in connection with the Company's initial public offering on or about October 19, 2016 (the "IPO" or the "Offering"); and/or (2) on the open market between October 19, 2016 and May 12, 2017, both dates inclusive, seeking to recover damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Forterra, Inc. manufactures water and drainage pipes and various precast products. The Company serves water-related infrastructure applications, including water transmission, distribution, and drainage; and contractors, distributors, and municipalities.

3.     Founded in 2016, Forterra was previously known as Hanson Building.  The Company is headquartered in Irving, Texas and its stock trades on NASDAQ under the ticker symbol "FRTA."

4.     Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) at the time of the IPO, organic sales in Forterra's Drainage and Water segments had significantly declined; (ii) the Company was experiencing increased pricing pressure due to competition and continued softness in its concrete and steel pipe business; (iii) Forterra had been losing business in its important pipe and precast business due to in large part to operational problems at its production plants; (iv) the Company had undisclosed material weaknesses in its internal controls that prevented it from

2

accurately reporting and forecasting its financial results; and (v) as a result of the foregoing, Forterra's public statements were materially false and misleading at all relevant times.

5.      The IPO was successful for the Company, which sold 18.42 million shares of Forterra common stock to the public at $18 per share, raising $331.56 million in gross proceeds ($313.3 million net of underwriting discounts, commissions and offering costs).

6.      On May 15, 2017, pre-market, Forterra reported net sales of $338.3 million for the first quarter of 2017, compared to $187 million in the prior year quarter.  Sales growth was solely "attributable to the impact of acquisitions that increased net sales by $163 million" rather than to organic growth.  In addition, Forterra reported a consolidated net loss of $22.5 million, or $0.35 loss per share.  Forterra's Chief Executive Officer commented that the Company's "earnings results for the quarter were impacted by a number of factors that unfortunately will persist through the second quarter of 2017."

7.      On this news, Forterra's share price fell $4.79, or 24.29%, to close at $14.93 on May 15, 2017.

8.      At the time of the filing of this action, Forterra common stock is trading below $5 per share, a decline of approximately 75% from the IPO price.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act

(15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

12.     Venue is proper in this Judicial District pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v), Section 27 of the Exchange Act (15 U.S.C. §78aa), and 28 U.S.C. §1391(b) and (c), as the acts and conduct complaint of herein occurred in substantial part in this District.

13.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired Forterra securities at artificially inflated prices and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant Forterra is headquartered in Texas with principal executive offices located at 511 E. John Carpenter Freeway, Suite 600, Irving, Texas 75062. Forterra's shares trade on the NASDAQ under the ticker symbol "FRTA."

16.     Defendant Jeffrey Bradley ("Bradley") is, and was at the time of the IPO, the Chief Executive Officer ("CEO") of Forterra and a member of its Board of Directors (the "Board").

17.     Defendant William Matthew Brown ("Brown") is, and was at the time of the IPO, an Executive Vice President and the Chief Financial Officer of Forterra.

18.     Defendant Lori M. Browne ("Browne") is, and was at the time of the IPO, a Senior Vice President and the General Counsel of Forterra.

19.     Defendant Kyle S. Volluz ("Volluz") is, and was at the time of the IPO, a member of the Forterra Board.

20.     The Defendants named above in ¶¶ 16-19 signed the Registration Statement

21.     Defendants Kevin Barner, Robert Corcoran, Samuel D. Loughlin, Clint McDonnough, John McPherson, Chris Meyer, Jacques Sarrazin, Chadwick Suss and Grant Wilbeck were all identified as "Director Nominees" in the Registration Statement.  Along with the Defendants named above in ¶¶ 16-19, they are referred to herein as the "Individual Defendants."

22.     Defendant Forterra and Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

23.     Forterra, Inc. manufactures water and drainage pipes and various precast products. The Company serves water-related infrastructure applications, including water transmission, distribution, and drainage; and contractors, distributors, and municipalities. Forterra was previously known as Hanson Building Products.

24.     In March 2015, Controlling Shareholder Defendant Lone Star Fund IX (with its related entities, "Lone Star") purchased the Company from HeidelbergCement AG for $1.4 billion in a highly leveraged buyout. Prior to selling the Company to Lone Star,

HeidelbergCement AG had unsuccessfully attempted to conduct an IPO to raise capital to pay down the Company's already high debt load. Following the acquisition by Lone Star, the acquired businesses that now make up Forterra were operated by Controlling Shareholder Defendant LSF9 Concrete Holdings Ltd ("Concrete Holdings"), as a wholly owned subsidiary of Lone Star.

25.     Lone Star is an investment advisory firm that owns multiple other industrial manufacturing companies including Tote Systems (bulk container equipment, systems & services); Reliant Worldwide Plastics (injection-molded plastic commercial airplane seats); Concrete Related Products (fabricator of reinforcement bar used in concrete construction and concrete product manufacturing); Energy Steel Products, Inc. (stainless steel mill support for oil & gas, aerospace and other industries); Woodlawn Manufacturing (integrated manufacturer of metal parts for military ammunition and warheads); Continental Electronics (radio frequency transmitters); Alsay Incorporated (municipal and industrial water wells); Yellow Checker Cab Company of DFW (largest cab company in the Dallas-Fort Worth metroplex); Frac Tank Rentals (largest frac tank rental company in Permian Basin); Green Energy Oilfield Services (provider of fluid transportation, storage, disposal and other critical services including frac tank rentals in Texas); State Service Company (engineering, fabrication and construction services to the offshore oil and gas industry); RWI Construction (above-ground services to the oil and gas industry); Teton Buildings, LLC (remote workforce accommodations for oil, gas, mining industries); Trinity Forge (closed-die forgings and machined parts); and Inter-American Oil Works (manufacturer of equipment for oil and gas drilling rigs).

26.     In February, 2016, Lone Star changed Concrete Holdings' name to Forterra.

27.     Forterra's remaining operations are the manufacture of pipe and precast products in the U.S. and Eastern Canada for a variety of water-related infrastructure applications, including water transmission, distribution and drainage. The Company operates 96 manufacturing facilities located across North America that design, manufacture, and distribute products used in infrastructure projects serving both residential and nonresidential markets.

28.     Forterra has two reporting segments, each responsible for approximately half of the Company's revenues: Drainage Pipe and Water Pipe. Drainage is driven by waste-water and storm-water infrastructure, highway infrastructure construction, and residential housing starts. Water Pipe sales are driven by residential housing starts, and public spending on water supply construction and municipal infrastructure.

29.     By end market, Forterra generates the largest portion of revenue from U.S. residential markets (35%), followed by U.S. infrastructure (30%) and U.S. commercial (23%). Approximately 9% of revenues are generated outside of the U.S. (largely in Canada).

30.     In April 2016, Lone Star took the former combined company's UK operations public as a separate company, Forterra UK, in which Lone Star retains majority-ownership. Forterra has no relation with Forterra UK other than Lone Star's majority ownership of both companies.

31.     After acquiring the Company, Lone Star caused Forterra to make a series of acquisitions, including acquiring:

   • USP Holdings Inc., (or "U.S. Pipe") in April, 2015 for $775 million (operates in the water segment);

   • Cretex Concrete Products, Inc. in October, 2015 for $245 million (operates in the drainage segment);

   • Sherman-Dixie Concrete Industries, Inc. in January, 2016 for $67 million (operates in the drainage segment);

7

• Bio Clean Environmental Services, Inc. and Modular Wetland Systems, Inc., (together "Bio Clean") in August, 2016 for $30 million (operates in the drainage segment);

• J&G Concrete Operations LLC in October, 2016 for $32 million (operates in the drainage segment); and

• Precast Concepts LLC in October, 2016 for $97.1 million (operates in the drainage segment).

32.     In order to make all of these acquisitions, Lone Star had loaded the Company with even more debt prior to its IPO and as of June, 2016, Forterra had approximately $1.2 billion of long-term debt—more than triple the amount it had carried just 21 months prior when Lone Star acquired it from HeidelbergCement AG. The Company was far more highly leveraged than any of its competitors and the Registration Statement expressly stated that the funds raised in the IPO were being used to pay down its debt.

33.     On or about July 8, 2016, Forterra filed with the SEC a Registration Statement on Form S-1, which would later be utilized for the IPO following several amendments made in response to comments received from the SEC.

**Materially False and Misleading Statements Issued**

34.     On October 19, 2016, when the SEC declared the Registration Statement effective. On or about October 21, 2016, Forterra and the Underwriter Defendants priced the IPO and filed the final Prospectus for the IPO, which forms part of the Registration Statement (collectively, the "Registration Statement").

35.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation.

36.     The Registration Statement positively described the then-current state of Forterra management's capabilities and proficiency without disclosing that the Company's Chief Operating Officer and various other senior management executives had recently resigned. The Registration Statement stated in pertinent part as follows:

Since being acquired from HeidelbergCement AG in 2015, we have undergone a significant transformation to become a leading water infrastructure company throughout the United States and Eastern Canada. As part of this transformation, we have:

- *Upgraded our senior leadership team*, including a new CEO and CFO, both of whom have relevant public company leadership experience and manufacturing industry expertise

- Rebranded our business to "Forterra" to strengthen and unify our corporate identity

- *Strengthened corporate functions to operate as a fully autonomous, standalone company*

- Implemented incentive compensation arrangements at the sales level to drive profitable growth and instill a strong performance culture

- Launched numerous operational, commercial and cost savings initiatives throughout our businesses, targeting efficiency and profitability improvements *from which we believe we have realized more than $21 million of year to date savings as of August 31, 2016 and will realize further substantial efficiencies*

- *Executed our strategic acquisition strategy* to build geographic scale and significantly enhance our extensive product offering with the acquisitions of Cretex Concrete Products, Inc., or Cretex, Sherman-Dixie Concrete Industries, Inc., or Sherman-Dixie, USP Holdings Inc., or U.S. Pipe, an industry leader in DIP manufacturing and sales, and Bio Clean Environmental Services, Inc. and Modular Wetland Systems, Inc., or together Bio Clean

- *Streamlined our product portfolio* and refocused our efforts and resources on water infrastructure with strategic transactions, including the divestiture of our bricks and roof tile businesses

***

9

*Experienced Management Team with Proven Ability to Grow Businesses and Integrate Acquisitions.* Our management team, led by Jeff Bradley, our Chief Executive Officer, has *a proven track record of increasing shareholder value and generating profitable growth, attractive margins* and cash flow. Mr. Bradley and other key executives, including Matt Brown, the Chief Financial Officer, have relevant history managing public companies, as well as extensive experience in the manufacturing industry. Our management team has proven their ability to execute on our acquisition strategy, *leading us in growth through three substantive acquisitions* that almost doubled our 2015 historical net sales . . . on a pro forma basis. *Further, Mr. Bradley and his team are continuing to execute a comprehensive program to drive commercial, operational and procurement excellence, as well as managing working capital to increase free cash flow.*

37.     The Registration Statement stated that Forterra's "organic growth strategy [was] focused on leveraging [its] *low-cost operations, high level of customer service and product innovation capabilities*, as well as [its] product breadth and industry-leading scale, *to cross-sell [its] products to existing customers to increase penetration and project wins and to gain market share through new customers."*

38.     The Registration Statement stated that Foterra's "extensive product offering create[d] a *compelling value proposition for [its] customers* as it eliminate[d] the need to engage multiple suppliers of stormwater and wastewater-related products for a single project, *thereby maximizing efficiency and allowing our customers to meet more aggressive timetables,"* and also stated that Forterra had "the ability to custom-build products to complex specifications and regulations, *further enhancing [its] ability to address customer needs*."

39.     Similarly, the Registration Statement positively described Forterra's purported "expansive distribution network [that] *allow[ed it] to achieve lead times among the shortest in the industry"* and stated that Forterra's "drainage offering create[d] a *compelling value proposition for customers* by eliminating the need to seek multiple bids for a single project, *helping maximize efficiency for time sensitive orders."*

10

40.     Concerning the Company's "Competitive Strengths," the Registration Statement stated that Forterra's "geographic footprint enable[d] [it] to win more large business projects than [its] local or regional competitors, as [it could] provide services to contractors and distributors across geographies and product categories.

41.     Concerning the Company's product sourcing, the Registration Statement emphasized that "due to [Forterra's] scale, [the Company had] purchasing power with suppliers, which reduce[d] our operating costs and enhance[d] [its] ability to win business in competitive bidding processes."

42.     Addressing the Company's then-present business metrics and financial prospects, the Registration Statement emphasized the Company's "*Attractive and Expanding Margins* and Strong Cash Flow Profile." The Registration Statement stated, in pertinent part, as follows:

> Due to our increasing scale, *cost cutting initiatives* and our work toward integrating acquisitions, *we have generated attractive and increasing margins*, capitalizing on our *low-cost operations* and operating leverage. Our regional and local sales force, strategically located manufacturing facilities and broad distribution network allow us to serve our customers across the United States and Eastern Canada *at a competitive cost with efficient procurement and operations.* We expect to further increase our scale through acquisitions and, as a result, we expect to continue to generate purchasing power, operating leverage and cost saving opportunities. *Furthermore, we have an ongoing strategy of implementing cost-cutting initiatives at our production plants.* As of August 31, 2016, we have recognized year to date savings of more than $10 million, $9 million and $1 million from procurement, operational and commercial initiatives, respectively. *We continue to roll out cost and productivity improvements at new sites and have identified new cost reduction opportunities in resale items, transportation, logistics and energy.* Additionally, we have *increased our margins* and cash flow through operational improvement of acquired businesses.

43.     Likewise, elsewhere the Registration Statement listed the Company's ability to "Enhance Margins, Free Cash Flow and Returns Through Operational and Commercial Excellence" as a "Business Strategy." The Registration Statement stated in pertinent part as follows:

*We expect to continue growing our margins through ongoing operational, commercial and cultural initiatives.* We are working to leverage our information technology and financial systems to lower costs and implement systematic pricing across our business. We will continue to manage working capital and seek scale-driven procurement efficiency improvements through centralized purchasing and fixed overhead control and reduction.

44.     The Registration Statement stated that Forterra's "success in acquiring businesses ha[d] been the result of [its] highly disciplined acquisition strategy, continuous monitoring of potential targets in an opportunity-rich landscape *and focus on culture and people, among other things*," that the Company had "*successfully achieved meaningful cost and revenue synergies through the implementation of best practices and operational improvement initiatives in the acquired businesses."*

45.     Elsewhere, discussing Forterra's "Business Strategy," the Registration Statement emphasized that Forterra's "scale enable[d] [it] to be *among the industry's lowest cost producers."*

46.     Addressing how Forterra planned to "Leverage [Its] Commitment to Product Innovation and Technical Expertise to Optimize Product Mix and Capitalize on Market Opportunities," the Registration Statement claimed that Forterra's "technical salesforce also *proactively reache[d] out to [its] customers on a regular basis to ensure that [its] customers [were]satisfied and [its]products adhere[d] to project specifications."*

47.     The statements referenced in ¶¶ 34-46 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) at the time of the IPO, organic sales in Forterra's Drainage and Water segments had significantly declined; (ii) the Company was experiencing increased pricing pressure due to

competition and continued softness in its concrete and steel pipe business; (iii) Forterra had been losing business in its important pipe and precast business due to in large part to operational problems at its production plants; (iv) the Company had undisclosed material weaknesses in its internal controls that prevented it from accurately reporting and forecasting its financial results; and (v) as a result of the foregoing, Forterra's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

48.     The IPO was successful for the Company, who sold 18.42 million shares of Forterra common stock to the public at $18 per share, raising $331.56 million in gross proceeds ($313.3 million net of underwriting discounts, commissions and offering costs).

49.     On May 15, 2017, pre-market, Forterra reported net sales of $338.3 million for the first quarter of 2017, compared to $187 million in the prior year quarter.  Sales growth was solely "attributable to the impact of acquisitions that increased net sales by $163 million" rather than to organic growth.  In addition, Forterra reported a consolidated net loss of $22.5 million, or $0.35 loss per share.  Forterra's Chief Executive Officer commented that the Company's "earnings results for the quarter were impacted by a number of factors that unfortunately will persist through the second quarter of 2017."

50.     On this news, Forterra's share price fell $4.79, or 24.29%, to close at $14.93 on May 15, 2017.

51.     At the time of the filing of this action, Forterra common stock is trading below $5 per share, a decline of approximately 75% from the IPO price.

52.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

53.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class (the "Class"), consisting of all those who purchased or otherwise acquired Forterra securities: (1) pursuant and/or traceable to Forterra's false and misleading Registration Statement and Prospectus, issued in connection with the Company's IPO; and/or (2) on the open market between October 19, 2016 and May 12, 2017; and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

54.     The members of the Class are so numerous that joinder of all members is impracticable.  At all relevant times, Forterra securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Forterra or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

55.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

56.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

57.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public misrepresented material facts about the business, operations and management of Forterra;

- whether the Individual Defendants caused Forterra to issue false and misleading financial statements;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Forterra securities were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

58.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

59.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts;

- the omissions and misrepresentations were material;

- Forterra securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume at all relevant times;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Forterra securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

60.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

61.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

62. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

64. The Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

65. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Forterra securities.

66. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company

17

were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

67.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

68.     As a result of the foregoing, the market price of Forterra securities was artificially inflated. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Forterra securities in purchasing Forterra securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

69.     Had Plaintiff and the other members of the Class been aware that the market price of Forterra securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the

Company's and the Individual Defendants did not disclose, they would not have purchased Forterra securities at the artificially inflated prices that they did, or at all.

70.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

71.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of Forterra securities.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

72.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73.     The Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

74.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

75.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace. The Individual

Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Forterra securities.

76.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

77.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## COUNT III

### (Violations of Section 11 of The Securities Act Against All Defendants)

78.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

79.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against the Individual Defendants.

80.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

81.     Forterra is the registrant for the IPO. Individual Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

82.     As issuer of the shares, Forterra is strictly liable to Plaintiff and the Class for the misstatements and omissions.

83.     None of the Individual Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

84.     By reasons of the conduct herein alleged, each Individual Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

85.     Plaintiff acquired Forterra securities pursuant and/or traceable to the Registration Statement for the IPO.

86.     Plaintiff and the Class have sustained damages. The value of Forterra securities has declined substantially subsequent to and due to the Individual Defendants' violations.

## COUNT IV

### (Violations of Section 15 of The Securities Act Against the Individual Defendants)

87.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

88.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

89.     Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Forterra within the meaning of Section 15 of the Securities Act. Individual Defendants had the power and influence and exercised the same to cause Forterra to engage in the acts described herein.

90.     The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

91.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 23, 2017

Respectfully submitted,

*/s/Jeremy A. Lieberman*
**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
         ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Attorneys for Plaintiff*

**Submission Date**

2017-08-17 12:33:28

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.     I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against against Forterra, Inc. ("Forterra" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Forterra securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.     I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Forterra securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Forterra securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.     I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Matthew Spindler

## Acquisitions

**Configurable list (if none enter none)**

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
|:---:|:---:|:---:|
| 01/25/2017 | 79 | 19.9 |

## Sales

# Documents & Message



**Signature**



**Full Name**

Matthew Spindler



**FORTERRA, INC. (FRTA)**                                             **Spindler, Matthew**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|------|------------------|------------------------|------------------------|
| 1/25/2017 | Purchase | 79 | $19.9000 |